UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| PAMELA C.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 2:22cv114 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since January 15, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.).

2

3. The claimant has the following severe impairments: lumbosacral intervertebral disc disorder; cubital tunnel syndrome; carpal tunnel syndrome and lateral epicondylitis of the bilateral elbows (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation; avoid even moderate exposure to hazards and frequently perform fine and gross manipulation.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 6, 1976 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2020, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 49-55).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on September 27, 2022. On November 10, 2022 the

defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on December 5, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ's RFC assessment was inconsistent with the reconsideration-level state agency physician's opinion, which the ALJ found persuasive (Tr. 53-54). The ALJ held as follows:

> The State agency at the reconsideration level limited the claimant to light work, except occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation and avoid even moderate exposure to hazards. The severe impairments were major joint

4

> dysfunction and degenerative disc disease (Exhibits 3A). The State agency at the initial level did also include in the residual functional capacity to avoid concentrated exposure to wetness and vibration as well as avoid all exposure to hazards (Exhibit 1A).
>
> The State agency determination at the reconsideration level is more persuasive than the State agency opinion at the initial level. The State agency at the reconsideration level reviewed the claim more recently. In addition, their opinion is consistent with the overall evidence showing some positive upper extremity findings, but also evidence that the claimant sought treatment for her elbows/wrists/ hands in September 2020 for what appears to be merely an exacerbation, less than 12 months ago. Furthermore, the injections seemed to help. The undersigned did place manipulative limits in the residual functional capacity to account for her upper extremity issues.
>
> Her most recent treatment was not for her upper extremities, but for her back pain. This also seems to be an exacerbatory period that is being treated with conservative treatment. She had positive findings on the MRI, but no surgery was recommended. In addition, at her most recent visit at Lakeshore Bone and Joint, on physical examination, her lumbar range of motion was decreased, but her strength testing remained 5/5 throughout, she had a negative straight leg raising and a slow gait that was unassisted.

(Tr. 53-54).

Plaintiff asserts that the ALJ's holding does not cite to any expert opinion explaining why he restricted Plaintiff to frequent, rather than occasional, use of the hands. Plaintiff argues that the evidence supports a more restrictive limitation in fine and gross manipulations, citing to altered sensation, positive Tinel's sign, positive Phalen's test, and bilateral wrist tenderness. (Tr. 304-05). Plaintiff also points out that testing documented the presence of cervical disc disorder at C5-6 with radiculopathy.

Plaintiff acknowledges that the ALJ mentioned Plaintiff's bilateral hand tenderness, altered sensation, diagnosis and positive clinical tests. (Tr. 52). Plaintiff argues, however, that the ALJ erred by concluding, without explanation, that he accounted for Plaintiff's documented

5

symptoms. Plaintiff takes the position that the ALJ was not qualified to conclude that the record is consistent with an ability to frequently perform manipulative activities.

Plaintiff notes that she testified that she could grip a phone for only one minute and frequently dropped items due to her upper extremity conditions. (Tr. 70-71). Plaintiff contends this is consistent with Dr. Anderson's "directive" to use a hands-free headset and avoid activities that would keep the elbows flexed. (Tr. 305).

As the Commissioner points out, the ALJ actually assessed a more restrictive RFC than that articulated by the State Agency consultants. The ALJ explained that he limited Plaintiff to no more than frequent fine and gross manipulation, to account for evidence of some positive upper extremity findings. (Tr. 51, 53-54). The Commissioner further points out that positive diagnostic tests, such as those cited by Plaintiff, do not establish that she was more limited in her manipulative abilities than the limitations set forth in the ALJ's RFC assessment. The Commissioner also asserts that Plaintiff's reliance on Dr. Anderson's suggestion that she use a hand-free headset to alleviate her elbow issues is misplaced, as that was a one-time suggestion and not a "directive". The Commissioner also points out that Plaintiff did not cite to any specific examples of functional limitations that the ALJ should have included in the RFC, and no treatment provider offered an opinion as to Plaintiff's specific functional limitations.

While there is room for a difference of opinion regarding the medical evidence of Plaintiff's handling and fingering limitations, this Court will not re-weigh the evidence. As there is substantial evidence to support the ALJ's decision on this point, there is no basis for remand on this particular issue.

Next, Plaintiff argues that the ALJ's evaluation of Plaintiff's symptoms violated SSR 16-p

and was not supported by substantial evidence. SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."). Plaintiff contends that the ALJ provided only a few reasons for his conclusion that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the evidence of record. (Tr. 51-52).

The ALJ's only remarks, after reciting boilerplate language, was that Plaintiff had "very little treatment overall" and "much of it was for her left foot neuromas." (Tr. 52). Plaintiff points out that even if one accepted these statements as a valid subjective symptom evaluation, podiatry records and examinations consisted of only 22 pages of the entire exhibit file. (Tr. 281-302). Plaintiff notes that she had consistent and regular appointments with specialists along with numerous imaging studies at Lakeshore Bone & Joint for her lumbar spine pain, cervical spine pain and upper extremity complaints. (Tr. 264-68, 303-09, 318-24). Additionally, the ALJ did not evaluate Plaintiff's daily activity restrictions. (Tr. 51-52). At stage two of the SSR 16-3p analysis, the ALJ should consider the claimant's alleged symptoms in light of the frequency and intensity of pain, aggravating factors, the effectiveness of treatment, and the claimant's daily activities. In a March 2020 function report, Plaintiff noted getting assistance from family members for light household chores (Tr. 225). Also, she could not drive for more than twenty minutes at a time and had difficulty doing puzzles due to pain with prolonged sitting. (Tr. 227). Her sons and husband cared for most of her needs. (Tr. 230).

Also, the ALJ did not conduct a pain evaluation in the decision. At the hearing, Plaintiff testified regarding her variable pain levels, and her diminished sitting and standing capacity. (Tr.

68-69, 71-72). Plaintiff also engaged in pain relief measures such as injections, strapping of the feet, icing, heating pads, appointments with varied specialists and medications such as transdermal patches, Cyclobenzaprine and Norco. (Tr. 71-73, 264, 266, 273); SSR 16-3p ("Persistent attempts to obtain relief of symptoms . . . may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."). Plaintiff argues that her complaints are consistent with her arthritis of the cervical spine, bulges/tears in the lumbar spine, reduced range of motion, abnormal clinical findings of the hands and positive straight leg raise. (Tr. 595, 713, 775, 811, 881, 964).

This Court agrees with Plaintiff that the ALJ failed to properly explain the basis for rejecting Plaintiff's symptoms. Remand is appropriate on this issue.

Next, Plaintiff argues that the Appeals Council failed to consider new and material evidence concerning Plaintiff's physical impairments. A disability claimant is allowed to present new evidence at each stage of administrative review. *See* 20 C.F.R. § 404.900(b). Sentence Four of 42 U.S.C. § 405(g) likewise provides for remand when "the Appeals Council did not adequately consider the additional evidence." A district court's review of whether the Appeals Council erred in applying the "new and material" standard is *de novo*. *Perkins v. Chater*, 107 F.3d 1291, 1294 (7th Cir. 1997). Here. in the Appeals Council denial letter, the agency cited that Plaintiff submitted new evidence from Lakeshore Bone and Joint Institute from April 5, 2021, through August 27, 2021. (Tr. 2). The Appeals Council ruled that: "This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 29, 2021." (Tr. 2). Plaintiff argues that this language is not sufficiently specific to confirm that the Appeals Council had accepted and reviewed the

8

newly submitted evidence.

The record shows that within the same month as the ALJ's decision, a discogram of Plaintiff's spine showed a reproduction of pain at L4-5 and L5-S1 at low pressure. (Tr. 14). The Plaintiff also had posterolateral tear at L4-5 and severe degenerative changes at L5-S1. *Id*. The accompanying lumbar CT scan showed annular tears at L4-5 and L5-S1. (Tr. 18). Additionally, the records contained reports of additional injections in Plaintiff's upper extremities and reduced lumbar range of motion findings. (Tr. 24, 27-28). Additionally, Dr. Thomkins recommended a newly FDA approved disc replacement surgery after reviewing the objective tests in August 2021. (Tr. 24, 33). Previously, the orthopedic surgeon believed that Plaintiff was not a surgical candidate due to only a fifty percent chance of benefit. (Tr. 268). Plaintiff argues that the surgical recommendation was inconsistent and contrary to the ALJ's assertions that Plaintiff received "very little treatment overall." (Tr. 52).

Because the clinical and objective findings along with the surgical recommendation related to Plaintiff's longstanding lower back and upper extremity pain complaints, they were clearly relevant to the period at issue. For new evidence "[t]o be material, a claimant does not need to show that it is 'more likely than not' that the ALJ's outcome would have been different." *Willis v. Apfel*, 116 F. Supp. 2d 971, 976 (N.D. Ill. 2000) (internal citations omitted). Rather, the Plaintiff needs to "show that there is a reasonable possibility that the ALJ would have reached a different conclusion had the evidence been considered." *Id*.

To be material, the new evidence a claimant submits must also relate to the claimant's condition "during the relevant time period encompassed by the disability application" that was reviewed by the ALJ. *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). Therefore, this

9

Court agrees with Plaintiff that the Appeals Council's refusal to adequately consider the supplemental evidence Plaintiff submitted, or remand for an updated RFC determination, was erroneous. These particular records post-date the ALJ's decision by only a few months. (Tr. 8-38). Under these circumstances, remand is necessary since it is reasonably possible that the ALJ's determination could have been different when considering Dr. Thompkins' post-hearing treatment records. *See Stepp v. Colvin*, 795 F.3d 711, 725 (7th Cir. 2015)("[t]he minimal information provided by the Appeals Council in its denial of [the] request for review is insufficient to allow us to determine with any confidence that the Council accepted [the treating physician]'s notes as new and material evidence"). Thus, remand is warranted on this issue.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: December 23, 2022.

s/ William C. Lee
William C. Lee, Judge
United States District Court
